UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GENERAL ELECTRIC COMPANY,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

No. 3:14-cv-00190 (JAM)

**RULING RE DISCOVERY DISPUTE**

Plaintiff General Electric Company ("GE") and defendant United States are embroiled in a high-stakes dispute involving GE's claim for a tax refund with interest of approximately $660 million. The dispute stems from a series of complex corporate restructuring/sale transactions that occurred more than ten years ago.

The parties are now entangled in a discovery dispute involving a legal issue that does not appear (so far as the parties' briefings reflect) to have been previously addressed in any published decision—perhaps surprisingly so, because I would expect the issue to be framed with some frequency in complex litigation. The issue here supposes a lawsuit between Party A and Party B and that Party A issues a subpoena to a *non*-party seeking documents that may be subject to a claim of privilege by opposing Party B. It further supposes the right of Party B to conduct a *privilege* review of the subpoenaed documents before they are produced by the non-party to Party A to ensure that the document production does not include documents subject to a claim of attorney-client privilege.

The question, then, is whether Party B (or, more precisely, its counsel) may also—at the non-party's request—conduct a *responsiveness* review of the documents before they are

1

produced to Party A. In short, is it proper for a non-party recipient of a document subpoena from Party A to delegate or outsource a portion of its compliance obligations to the opposing Party B and its counsel in the litigation?

Here, the issue arises in the context of the Government's complaint about GE's conduct with respect to two subpoenas served by the Government on two non-parties to this action: Westport Insurance Company ("Westport") and Cahill Gordon & Reindel LLP ("Cahill"). Westport is a former subsidiary of GE and possesses documents relating to a former GE insurance subsidiary of great importance to this litigation. Cahill is a major law firm that served as counsel to GE on a range of transactional matters in 2002 and 2003 that are also important to the tax dispute in this case.

After GE learned of the Government's subpoenas to Westport and Cahill, GE's litigation counsel—Davis Polk & Wardwell LLP ("Davis Polk")—indicated to Westport and Cahill that GE wished to conduct a privilege review.[1] As confirmed by affidavits from counsel who represent Westport and Cahill, both Westport and Cahill provided Davis Polk with tens of thousands of pages of documents—both paper and electronic—that they believed could potentially be responsive to the subpoenas but with the expectation that a large volume of documents that they had initially collected in bulk might not be responsive to the subpoenas. They did so with understanding that Davis Polk in the course of its privilege review would also conduct a review to determine what documents are responsive to the subpoena. Counsel for both Westport and Cahill have expressed concern about their own ability to conduct a responsiveness review due to the passage of time and their lack of familiarity with this litigation; they have stated that Davis Polk would be better positioned to conduct this review.

---

[1] The United States has not disputed GE's claim that these documents could include privileged documents for which GE still possesses the right to assert the privilege. Nor is there any suggestion that any of the documents at issue would be subject to a claim of privilege by Westport or Cahill that is independent of GE's claim of privilege.

2

Although the Government does not contest GE's right to conduct a privilege review, it vehemently objects to GE or its counsel's involvement in deciding what documents are responsive to the subpoenas that it has served on Westport and Cahill. According to the United States, this involvement amounts to no less than "obstruct[ion]," "interference" and "abusive discovery tactics." Doc. #81 at 1. And it further contends that "[e]ven assuming it is proper to outsource responsiveness review to an entity not authorized to provide legal representation, and without first-hand knowledge of the subject of the request—it is certainly improper to outsource those responsibilities to the opposing party in the litigation." *Id.* at 2. For the reasons set forth below, I do not agree.

To begin with, it is not hard to understand why Westport and Cahill would gladly delegate to a third party the costly time-consuming process of determining what documents are responsive to the subpoenas. The interests of and costs imposed on third parties who have no stake in a lawsuit are appropriate considerations for this Court in its oversight of the parties' discovery process. *See, e.g.*, *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012).

Nor do I attribute inherently sinister motives to GE or its counsel. The United States does not contest the right of GE to conduct a privilege review, and it is only logical for GE counsel to conduct a responsiveness review of the documents before conducting a privilege review. Otherwise, GE would have to screen thousands of documents for privilege that were not responsive and not appropriately subject to production in the first place.

The Government's evident concern is that GE—as a party to this litigation—will have a more restrictive view of which Westport and Cahill documents are responsive to the subpoenas than if Westport and Cahill independently reviewed their own documents for responsiveness. Perhaps so. But the argument rests on a mistaken assumption of the Government's entitlement.

The Government has a right to receive documents that are responsive to its subpoenas, not to have a completely neutral party review and decide what documents are responsive. Non-parties to litigation often have allegiances to one party or another because of existing personal or business relationships. A non-party to litigation may well have its own incentive to restrictively interpret a subpoena for fear of disclosing information that may implicate itself in litigable claims of misconduct. The point is that non-parties are not necessarily disinterested. And if some non-parties are truly disinterested, they may well decide that it is cheaper to do a document dump on the requesting party rather than to devote resources to a careful responsiveness review; the Government has no right to over-production of materials beyond the scope of its subpoenas.

The Government contends that it would be ethically improper for Davis Polk attorneys to conduct a responsiveness review of documents of a non-party who is not their own client. Doc. #86 at 2. That is incorrect. GE is the law firm's client, and a lawyer may generally pursue any lawful activities that serve the interest of his or her client. As the commentary to the ABA's rules of professional conduct make clear, "[a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor," and "[a] lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." ABA Model Rules of Prof. Conduct, Rule 1.3 cmt. 1. Nothing in the ethical rules bars a lawyer from reviewing documents that do not belong to his or her client. If it serves the interest of a law firm's client for the law firm to review the documents of a non-party to the litigation (and who in turn is willing to have the law firm conduct this review), then this review bespeaks good lawyering rather than a cause for complaint to the Court.

Nor am I persuaded by the Government's myopic view of the scope of the ethical rules that otherwise govern Davis Polk's conduct. The ethical obligations of counsel do not run solely to a client. Quite to the contrary, counsel have multiple ethical obligations to third parties and to the Court that foreclose them from lying, from concealing or altering evidence, or from otherwise engaging in conduct inimical to the due administration of justice.[2] I decline to conclude that Davis Polk attorneys are free from ethical constraints with respect to their review of Westport and Cahill documents or to presume that Davis Polk attorneys will fail to disclose non-privileged, responsive documents in breach of their ethical obligations.

The Government otherwise suggests that the interests of the non-parties will be unprotected unless the responsiveness review is conducted by a law firm that represents the non-party rather than just representing a party to the litigation. That makes no sense to me. Both non-parties here are represented by sophisticated counsel, and there is nothing to suggest that their interests have been subordinated or overlooked in the least.

The Government chiefly relies on *In re Seagate Tech. II Sec. Litig.*, 1993 WL 293008 (N.D. Cal. 1993). Although the case involved non-party subpoenas, that is where the similarity stops. The court in *Seagate* warned a party and its counsel "to refrain from interfering with the third-party discovery by coaching the [non-party subpoena recipients] to object to the subpoenas or falsely representing to them the relevant time period of discovery." *Id.* at *2. Here, there has

---

[2] *See, e.g.*, ABA Model Rules of Prof. Conduct, Rule 3.4(a) (attorney may not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value"); *id.*, Rule 3.4(d) (attorney may not "fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party"); *id.*, Rule 3.4(f) (attorney may generally not "request a person other than a client to refrain from voluntarily giving relevant information to another party"); *id.*, Rule 4.1(a) (attorney may not knowingly "make a false statement of material fact or law to a third person"); *id.*, Rule 8.4(c) & (d) (attorney may not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" or "engage in conduct that is prejudicial to the administration of justice"). Rather than acknowledging any of these ethical rules, the Government inappositely cites only rules dealing with an attorney's obligations to a client. Doc. #86 at 2 n.3.

been no showing that GE or Davis Polk has coached Westport or Cahill to raise invalid objections or that it has misrepresented anything at all about the legitimate scope of discovery.

In short, I reject the Government's argument that it is categorically improper for a party (or its counsel) in a lawsuit to undertake not only a privilege review but also a responsiveness review of documents that have been sought by the opposing party from a non-party to the litigation. My conclusion assumes that the non-party has knowingly delegated responsibility to a party to the litigation to conduct a responsiveness review. And of course it presupposes as always that the non-party recipient of a subpoena—notwithstanding its administrative delegation of functions to any third party—remains ultimately answerable to ensure that its obligations to fulfill the requirements of the subpoena are fully and faithfully discharged.

Here, apart from the Government's complaints about the role of GE and its counsel, the Government argues that there has been an inadequate response to the Westport subpoena. I am not (yet) convinced. GE represents that it received about 84,000 electronic documents from Westport, that its search-term queries yielded approximately 40,000 potentially responsive documents, and that each of these 40,000 documents were reviewed "by eye" by Davis Polk counsel. GE also received and reviewed approximately 12,000 documents in paper form. The parties estimate that between 9,000 to 10,000 of the combined total of these electronic and paper documents have been produced as responsive. Standing alone, the low but sizeable percentage of documents that have been determined to be responsive does not convince me that GE or its counsel has likely or necessarily failed to produce responsive documents.

The Government does not identify any type or class of document that it has not received and that it would reasonably expect to have been produced from Westport's files. It does not make any other showing of inadequacy except for its reliance on numerical disparity. For lack of

a sufficient showing that responsive documents have not been produced, I decline to consider the Government's requests for GE to disclose its electronic search terms or to allow the Government a "quick peek" of allegedly non-responsive documents.

It is so ordered.

Dated at New Haven this 22nd day of July 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge