UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GENERAL ELECTRIC COMPANY,
    Plaintiff,

v().

UNITED STATES OF AMERICA,
    Defendant.

No. 3:14-cv-00190 (JAM)

ORDER RE MOTION TO COMPEL DISCOVERY

Plaintiff General Electric Company ("GE") has sued defendant United States of America for a large tax refund with interest of approximately $660 million. The dispute stems from a series of complex corporate restructuring/sale transactions that occurred more than ten years ago. *See also Gen. Elec. Co. v. United States*, 2015 WL 4478294 (D. Conn. 2015) (prior discovery ruling).

The Government now challenges GE's claims of privilege for nearly 9,000 documents that have been listed to date on GE's privilege logs, and the Government anticipates raising similar challenges to additional GE privilege logs. *See* Doc. #92. GE opposes the Government's motion (Doc. #101), and the Court conducted a lengthy hearing on the Government's motion to compel on September 11, 2015.[1]

## DISCUSSION

The claims of privilege at issue concern the common law attorney-client privilege and the related tax practitioner privilege, 26 U.S.C. § 7525. The parties do not dispute the basic elements

---

[1] GE claims that the Government's objections are untimely. While I agree that the Government might have acted with a bit more dispatch to raise objections as soon as GE began producing its numerous privilege logs beginning in December 2014, it is clear that the Government raised substantial written objections to GE's privilege logs by May 2015. In light of the importance of ensuring the integrity of the parties' disclosure of information and associated claims of privilege, I am unwilling to conclude that the Government's objections have been waived. Still, any future objections by either party to each other's privilege logs should be asserted within 30 days of receipt of the privilege log.

of the attorney-client privilege: "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *see also Restatement (Third) of Law Governing Lawyers* §§ 68-73 (elements of attorney-client privilege in corporate/organizational context).[2]

The Government raises multiple challenges to GE's privilege logs. As discussed below, I have considered and reject all these challenges except for the Government's claim with respect to GE's failure to designate the author and recipient of each document as required under this Court's Local Rule 26. The Government's principal claims are addressed below.

### *Privilege Claim for Attachments to Emails*

The Government claims that GE has improperly asserted privilege for attachments to otherwise privileged email communications between attorneys and GE personnel. This argument is problematic for the Government to pursue because its very own privilege logs lay claim to privilege for multiple attachments to the Government's own email communications. Moreover, the Government's objection runs contrary to well-established law that information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 390, 395 (1981) (noting that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice," while making clear that the privilege "only protects disclosure of

---

[2] Although GE's privilege logs also assert claims for work-product privilege, the Government has not seriously contested GE's claims in this respect.

communications" and "does not protect disclosure of the underlying facts by those who communicated with the attorney"); *Bernbach v. Timex Corp.*, 174 F.R.D. 9, 10 (D. Conn. 1997) (noting that "while Timex may inquire about the facts that underlie Mrs. Sundholm's allegations, Timex is precluded from inquiring into what Mrs. Sundholm communicated to her attorney about the facts underlying her allegations").

The Government claims that only confidential or secret facts that may have been communicated in an attachment to an otherwise privileged communication may be subject to a claim of privilege. This argument, however, conflates the requirement that an attorney-client *communication* be confidential, with a non-existent requirement that the underlying *information* that is transmitted be non-public or confidential.

Indeed, the Second Circuit has made clear that an attorney-client privilege is not "lost by the mere fact that the information communicated is otherwise available to the public," because "[t]he privilege attaches not to the information but to the communication of the information." *United States v. Cunningham*, 672 F.2d 1064, 1073, n.8 (2d Cir. 1982). For this reason, any public document that a client sends a lawyer might be subject to a claim of privilege if disclosure would reveal that it was communicated in confidence to an attorney in connection with the seeking or receipt of legal advice. Imagine, for example, that a company executive sent the company's counsel a news article about alleged bid-rigging activities within the company's industry; if the executive did so for the confidential purpose of seeking advice about the company's legal obligations or liability exposure, the fact that the news article is a quintessentially public document would not defeat a claim of privilege. Accordingly, the fact that numerous and concededly privileged GE email communications included attachments (such as draft board meeting minutes, presentations, and spreadsheets) evincing facts that were known to

third parties who were not part of the privileged communications does not render these documents free from a valid claim of privilege in the context of their inclusion within otherwise privileged communications.

### *Privilege Claim for Legal-vs.-Business Advice*

The Government further argues that certain documents claimed as privileged were predominantly for business purposes, not legal or tax advice purposes. *See In re County of Erie*, 473 F.3d at 420 (establishing that court must consider "whether the predominant purpose of the communication is to render or solicit legal advice," as distinct from business or policy advice). The Government maintains this objection despite GE's explicit descriptions of documents on the privilege log as "reflecting legal advice" or "reflecting tax advice." The Government presented a few examples of documents that had been claimed as privileged in one production, but otherwise disclosed in another part of GE's production as unprivileged. I cannot conclude from these isolated examples that there is an endemic or systemic concern with GE's privilege designations, in view of the very large number of documents subject to production and in light of the detailed representations of GE's counsel concerning the privilege review quality-assurance process. Moreover, in view of the kinds of complex commercial transactions at issue in this case and with their substantial legal regulatory overtones, it is far from surprising that GE would validly claim privilege to a large proportion of responsive documents.

### *Privilege Claims as to Documents Lacking Indication of Author or Recipient*

Apart from documents as discussed above that are attachments to email or other communications, the Government also challenges GE's failure to identify authors and recipients for up to 1,000 or so "standalone" documents that appear on GE's privilege log. This omission is indeed contrary to the requirement of this District's local rule that a privilege log identify the

author and recipient for each document. *See* D. Conn. L. Civ. R. 26(c)(4). The author/recipient designation requirement is not a make-work rule; rather, it preserves the integrity of the privilege claim process by explicitly linking claims of privilege in the ordinary course to a requisite and specific attorney-client communication.

This is not to suggest that a standalone, non-communicated document may never be subject to a proper claim of privilege. The Second Circuit, for example, has upheld a claim of privilege to a client's notes of her conversations with her attorney—notes which themselves were not transmitted to the attorney as part of a communication. *See United States v. DeFonte*, 441 F.3d 92, 95-96 (2d Cir. 2006). In keeping with the purpose of the attorney-client privilege, the guiding rule for documents that have not themselves been communicated between privileged persons is whether the document reflects the substance of a communication that would otherwise be privileged.

GE contends that, although it cannot always identify a document's author and recipient, it is still possible to ascertain from the content of a document that it reflects the seeking of or rendering of legal or tax advice. Perhaps and even likely so. Indeed, the Government itself claims privilege for certain of its documents without identification of author and recipient. But as a categorical matter the claim of privilege remains more tenuous and uncertain in the absence of a link to a communication.

For this reason, I conclude that it is appropriate for this discrete category of standalone documents that are altogether bereft of the required author and recipient designations to be subject to independent review by a special master to be appointed in accordance with Fed. R. Civ. P. 53. This is not to suggest that the usual remedy for a failure to designate author and recipient in accordance with Local Rule 26 should be the appointment of a special master. For

the mine-run case, there may be obvious reasons that explain sporadic claims of privilege in the absence of author/recipient designations. A party that is unable to comply in full with the author/recipient requirement of Local Rule 26 would be well advised to make its reasons clear on a document-by-document basis within its privilege logs, rather than counting on the persuasiveness of after-the-fact explanations when litigating a motion to compel.

Here, I conclude the special master review of the standalone documents is appropriate in light of the context, complexity, and circumstances of this particular case. The parties should forthwith agree on or propose to the Court the names of special masters that would be acceptable to them and taking into account the requisites of Rule 53. To ensure an appropriate limit on the scope of review by the Special Master and in keeping with the parties' representations at the privilege hearing, the Special Master should review no more than 1,000 documents from each of the parties' respective privilege logs for which the parties have not identified an author and recipient in accordance with Local Rule 26.

## CONCLUSION

Beyond those points discussed above, I have considered and reject the Government's remaining objections to GE's privilege logs. For the reasons set forth above, the Court enters the following orders:

(1) The Court shall appoint a special master to review all challenged, standalone documents that lack identification of author and recipient.

(2) Counsel shall forthwith identify a mutually acceptable special master, or if the parties cannot agree, they should each submit up to three names each that they would recommend for appointment as special master to the Court.  The Court does not intend to appoint Magistrate Judge Fitzsimmons to serve as Special Master for this dispute.

It is so ordered.

Dated at New Haven this 15th day of September 2015.

/s/
Jeffrey Alker Meyer
United States District Judge